IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

C.A. No. _2:16-cv-02872-DCN_____

Karen Gibson and Letesha Nesmith
Individually and on behalf of
All others similarly situated

       Plaintiffs,

     vs.

Confie Insurance Group Holdings, Inc,
Driver's Choice Insurance Services LLC,
Nation Motor Club LLC, d/b/a Nation
Safe Drivers

       Defendants.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

The PLAINTIFFS complaining of the DEFENDANTS allege the following:

**PARTIES**

1.     PLAINTIFF Karen Gibson (GIBSON) is a citizen and resident of Manning, South Carolina located in Clarendon County.

2.     PLAINTIFF Letesha Nesmith (NESMITH) is a citizen and resident of North Charleston, South Carolina, located in Charleston County.

3.     DEFENDANT Confi Insurance Group Holdings, Inc. ("CONFI") is a corporation organized and existing pursuant to the laws of a state other than South Carolina and may be served at its corporate headquarters located at 6500 International Parkway, Suite 1500, Plano, Texas 75093.

4.     Defendant Drivers Choice Insurance Services LLC ("Drivers Choice") is a South Carolina Corporation and may be served through its registered agent, CT Corporation, 2 Office Park Court, Columbia, S.C. 29223.

5.      Defendant Nation Motor Club LLC doing business as National Safe Drivers ("NSD") is a corporation organized and existing pursuant to the laws of a state other than South Carolina and has its headquarters at 800 Yamato Road, Suite 100,  Boca Raton , Florida 33431 and may be served through its registered agent, C.T. Corporation, 1200 South Pine Island Road, Plantation, Florida 33324.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (2006) because the Complaint alleges violations of the Racketeered Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. § 1962 (c),(d) and the Truth In Lending Act (TILA), 15 U.S.C. § 1640.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 26 U.S.C. § 1332(d)(2) (2006) because the PLAINTIFFS are residents of the State of South Carolina; two of the DEFENDANTS reside for purposes of diversity jurisdiction in states other than South Carolina; and the Complaint alleges a "class action" in which the amount is controversy exceeds $5 Million.

8.      This Court also has supplemental jurisdiction over the common law claims alleged in the Complaint pursuant to 28 U.S.C. § 1367 (2006).

9.      Venue is proper in this District under 28 U.S.C. §1391 (2006) because a substantial part of the events or omissions giving rise to the claim occurred in South Carolina.

10.     DEFENDANTS  CONFI, NSB and Drivers Choice are subject to personal jurisdiction in South Carolina pursuant to S.C. Code Ann. § 36-2-803(1) (West 2010) because they regularly transact business in the State, solicit business in this State, derive substantial revenue from services rendered in this State, and the causes of action alleged herein arise from such conduct.

2

## CLASS ALLEGATIONS

11.    The claims of PLAINTIFFS GIBSON and NESMITH (collectively the "CLASS PLAINTIFFS") are asserted on behalf of themselves and the class of persons defined below (the Class).

12.    The Class consists of two subclasses.

a.    Subclass (A) shall consist of all persons ("customers") who purchased a TOW BUSTERS emergency roadside service policy issued by NSD and an automobile insurance policy through any one of Defendant CONFI's retail insurance brokerage outlets in the United States and the customer:

i.    failed to pay the monthly automobile insurance premiums, resulting in the cancellation of their automobile policy; and

ii.    purchased a replacement automobile insurance policy from a CONFI owned or controlled retail brokerage outlet;  and

iii.    was sold an additional TOW BUSTERS policy during the membership term of the initial TOW BUSTERS policy, without being provided any credit for the value of the unexpired term of the initial TOW BUSTERS policy within four (4) years from the commencement of this action.

b.    Subclass (B) shall consist of all persons ("customers") who financed the purchase of a TOW BUSTERS emergency roadside service policy or any other ancillary agency product "Agency Product" sold through any one of Defendant CONFI's retail insurance brokerage outlets in the United States pursuant to an installment payment plan requiring more than four (4) payments within one (1) year from the commencement of this action.

3

13.     Both CLASS PLAINTIFFS are Members of the Subclass A and Plaintiff Gibson is a Member of Subclass B.

14.     The Class contains more than 10,000 Members.

15.     The Class is so numerous that joinder of all Members is impractical.

16.     This case presents common questions of law and fact including, but not limited to, the following:

    a.     Whether the CLASS PLAINTIFFS are persons within the meaning of 18 U.S.C. § 1961(3);

    b.     Whether Defendant CONFI's network of retail brokerage offices located throughout the United States operated by wholly owned subsidiaries of CONFI including Defendant Drivers Choice is an enterprise engaged in activities which affect interstate commerce within the meaning of 18 U.S.C. § 1962;

    c.     Whether DEFENDANTS CONFI and NSD conspired with others to violate 18 U.S.C. § 1962(c) and did in fact violate Section 1962(c) by conducting and participating, directly and indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity;

    d.     Whether the CLASS PLAINTIFFS and Class Members have been injured in their business or property by reason of a violation of 18 U.S.C. §1962 (c) and (d);

    e.     Whether the DEFENDANTS engaged in a scheme to defraud customers of money by selling overlapping Tow Buster policies to the same customers during the same membership period without providing the customers credit for the unused portion of the first policy purchased;

4

f.     Whether the DEFENDANTS used the mails and/or wires in furtherance of a scheme to defraud;

g.     Whether the DEFENDANTS charged customers more for a TOW BUSTERS policy when the customer paid in monthly installments than if the customer paid the full amount at the time of purchase;

h.     Whether DEFENDANTS have been unjustly enriched by retaining premiums paid by customers for duplicate TOW BUSTERS policies covering the same membership period.

i.     Whether the DEFENDANTS CONFI and Drivers Choice conspicuously disclosed the finance charges and interest rate in writing to customers who paid monthly installments for the purchase of a TOW BUSTERS policy;

j.     Whether the DEFENDANTS CONFI and Drivers Choice complied with the TILA disclosure requirements regarding installment sales contracts involving four or more installment payments;

17.     The claims of the CLASS PLAINTIFFS are typical of the claims of the Class.

18.     The CLASS PLAINTIFFS will fairly and adequately protect and represent the interests of the Class because they have suffered injuries typical of those suffered by other Class Members; they are obtaining just relief for all Class Members; they will protect the interests of the Class and rigorously prosecute this action on behalf of the Class; and they have retained counsel to represent the Class who are experienced in securities and professional liability class actions, as well as other issues surrounding this case.

19.     The questions of law and fact that are common to the Class predominate over any questions affecting only individual Members.

5

20.    A class action is superior to other available means for a fair and efficient adjudication of this controversy.  Litigating individual claims described in this Complaint through multiple independent actions in multiple courts would impose duplicative costs and risks on individual plaintiffs, would unnecessarily burden the court system with redundant actions, and would risk inconsistent adjudications of the same factual and legal issues.  Absent a class action, the costs and risks of litigating individual claims against the DEFENDENTS would ensure that, as a practical matter, many claimants would be unable to enforce their rights and obtain redress for their injuries sustained as a result of the DEFENDANTS conduct.  It is therefore much more efficient to concentrate and resolve the Class Members' claims in this forum.

21.    The CLASS PLAINTIFFS do not believe that any Members of the Class currently have existing litigation claims against the DEFENDANTS in relation to the claims described in this Complaint.

22.    This action does not present difficulties in management that would preclude class treatment. The evidence relevant to the claims asserted in this Complaint is common to the Class, and the Class Members' identities and individual dealings with the DEFENDANTS can be proven through documentary evidence.

**GENERAL ALLEGATIONS**

**THE ENTERPRISE**

23.    CONFI describes itself as an industry leader in the sales and distribution of "Non-Standard Auto insurance" and operates more than 200 retail insurance broker locations throughout the United States under the brand names of A-Affordable Low Cost Auto Insurance, Baja Auto Insurance, Driver's Choice Low Cost Auto Insurance, Insure One Low Cost Auto Insurance and USAgencies Low Cost Auto Insurance.

24.    The CONFI retail brand name brokerages are owned by separate corporate entities, including Defendant Drivers Choice, which are all wholly owned subsidiaries of CONFI.

25.    The combination of all of CONFI's subsidiary corporations which collectively own approximately 200 retail insurance brokerages is an enterprise as defined under 18  United States Code § 1961(4).  Furthermore, each separate subsidiary, including Defendant Drivers Choice, is an enterprise as defined under 18 United States Code § 1961(4).

26.    The purpose of the Enterprise is to enrich the Defendants by defrauding customers of limited means and poor credit through unlawful schemes involving interstate wire transmissions.

27.    The fraudulent scheme involves selling overlapping and duplicative Tow Busters road side assistance memberships to customers who purchase replacement automobile insurance through the Enterprise after the customer's existing policy lapses in mid-term without providing the customer credit for the un-expired term of their pre-paid Tow Busters membership plan.

28.    The Defendants reap millions of dollars annually through this fraudulent scheme at the expense of low income, working poor individuals who struggle to make ends meet and who can least afford to lose money.

29.    Although the retail brokerage outlets are owned by separate entities, CONFI controls and directs the operation of all of these entities from its operational headquarters in California and Texass.

30.    CONFI sets the sales goals and commission structure for each of the entities.

31.    CONFI collects revenue from the retail outlets and pays the employees' salary and commission.

32.    CONFI requires that the insurance brokers sell a certain number of ancillary Agency Products, like the NSD TOW BUSTERS policy, and if the broker does not meet his or her sales

quota, their commission payments on the automobile insurance sales will be reduced or clawed back for the period.

33.     CONFI provides training materials to the wholly owned subsidiaries that specifically state *"Ancillary sales are not an option. It is required. Products should be offered at every point of sale."*

34.     CONFI also links all of the retail outlets together and with CONFI through an integrated network computer system into which information relating to the purchase of ancillary Agency Products is entered.

35.     CONFI also provides financing for insurance products to its wholly owned retail outlets through a separate wholly owned finance company named Confi Premium Finance Company, Inc.

36.     Confi Premium Finance Company is also an enterprise as defined under 18 United States Code § 1961(4).

37.     CONFI provides the disclosure documents to the retail outlets relating to premium financing and for the installment sales contracts for Agency Products.

## TOW BUSTER SCHEME

38.     NSD offers ancillary Agency Products for sale at all of CONFI'S retail outlets. These Agency Products include the Tow Buster roadside assistance policy and an electronic personal health record system called MedeFile Lite.

39.     NSD charges CONFI approximately $20 per Tow Buster policy for a six (6) month period.

40.     CONFI in turns charges the customer $36 for each Tow Buster policy when the customer pays in advance.

41.     CONFI also offers an installment payment option for the purchase of a six (6) month Tow Buster policy at a price of $10 per month for six (6) months, totaling $60.

42.    CONFI and NSD provide all of the documentation used by their retail locations for the installment sales of the Tow Buster policies.

43.    The installment sales documentation provided by CONFI and NSD and used by the retail brokers does not disclose the cash price of the policy, the amount of finance charges or the annual percentage rate of the charges.

44.    CONFI has a pattern and practice of double selling NSD ancillary Agency Products to customers whose automobile insurance policies lapse during the policy term. When the customer comes back to one of CONFI's retail outlets to reinstate his or her automobile policy, the customer is sold a new six (6) month automobile policy. At the same time, the CONFI broker is instructed to sell the customer another six (6) month Tow Buster policy which overlaps the remaining period on the first Tow Buster policy.

45.    If the broker does not sell the customer a duplicate Tow Buster's policy, the broker is punished by CONFI by reducing the broker's commission from the automobile insurance sale.

46.    CONFI nor NSD provide the customer credit for the unexpired term of the first policy.

47.    CONFI and NSB make millions of dollars annually by double charging customers for Tow Buster policies in this manner.

48.    NSD knowingly accepts duplicate payments from the same customers for overlapping Tow Buster roadside assistance policies without providing the customer with a refund or credit.

49.    DEFENDANTS' practice of selling overlapping Tow Buster policies without providing credit to the customer for the unused portion of the first policy purchased is widespread and systemic throughout all of the retail insurance brokerage outlets owned and operated by CONFI subsidiaries, including Drivers Choice.

9

## KAREN GIBSON

50.     On or about October 8, 2015 PLAINTIFF GIBSON purchased an automobile insurance policy from a Drivers Choice insurance broker located in Sumter, South Carolina. The insurance policy term was for 6 months, from October 8, 2015 until April 8, 2016. GIBSON financed the insurance through Confi Premium Finance.

51.     PLAINTIFF GIBSON was also sold a 6 month roadside assistance Tow Buster policy issued by NSD by the Drivers Choice broker. The effective date of the Tow Buster policy was from October 6, 2015 to April 6, 2016.

52.     PLAINTIFF GIBSON paid $162.40 to a Drivers Choice broker at the time of purchase. According to the document provided to GIBSON, $142.40 of her initial payment was for the insurance premium, $10 was for the Tow Buster monthly payment and the remaining $10 was an installment fee.

53.     On October 6, 2015, upon receipt of the $162.40, Defendant Drivers Choice forwarded the purchase information to Defendants CONFI and NSD via wire communication and also deposited GIBSON's payment in a bank account controlled by Defendant CONFI.

54.     On October 6, 2015, Defendant NSD provided a member number NRDE5165058 to Defendant Drivers Choice for GIBSON via wire communication.

55.     Defendant CONFI thereafter remitted $20 to Defendant NSD for the purchase of a 6 month Tow Buster policy for GIBSON, which was the entire cost of the Tow Buster policy charged to CONFI by NSD.

56.     Plaintiff GIBSON was charged $60 for the Tow Buster policy and under the terms of her agreement, she was scheduled to make 5 additional installment payments of $10 each.

10

57.     However, Defendants CONFI and Drivers Choice only charge $36 for a 6 month Tow Buster policy when the customer agrees to pay the full purchase price at the time of purchase.

58.     Plaintiff GIBSON was provided a document on October 6, 2015 when she purchased the insurance and TOW BUSTERS policies stating that no finance charges will be charged in connection with the Tow Buster policy or any other ancillary Agency Products.

59.     On February 7, 2016 Plaintiff GIBSON inadvertently missed her monthly payment to Defendant Drivers Choice. As a result, she was required to purchase a new automobile insurance policy because she was told the existing policy had lapsed.

60.     On February 8, 2016 GIBSON once again purchased an insurance policy at the Drivers Choice branch in Sumter South Carolina.

61.     GIBSON was also sold another 6 month Tow Buster policy on February 8, 2016 even though her existing policy did not expire until April 6, 2016. However, GIBSON chose not to pay for the Tow Buster policy through installment payments and therefore she was only charged $36. The effective date of the new policy was February 8, 2016 and the expiration date was August 8, 2016.

62.     On February 8, 2016 upon receipt of payment, Defendant Drivers Choice forwarded the purchase information to Defendants CONFI and NSD via wire communication and also deposited GIBSON's payment in a bank account controlled by Defendant CONFI. Thereafter, Defendant NSD provided a new member number NRDE5424677 to Defendant Drivers Choice for GIBSON via wire communication. Defendant CONFI thereafter remitted $20 to Defendant NSD for the purchase of a 6 month Tow Buster policy for GIBSON, which was the entire cost of the Tow Buster policy charged to CONFI by NSD.

## LETESHA NESMITH

63.    On November 23, 2015, PLAINTIFF NESMITH purchased an automobile insurance policy from a Drivers Choice insurance broker located in Charleston, South Carolina. The insurance policy term was for 6 months, from November 23, 2015 through May 23, 2016. NESMITH financed the insurance through Confi Premium Finance.

64.    PLAINTIFF NESMITH was also sold a 6 month roadside assistance Tow Buster policy issued by NSD by the Drivers Choice broker. The effective dates of the Tow Buster policy were from November 23, 2015 to May 23, 2016. The fee paid charged to NESMITH was $36.

65.    PLAINTIFF NESMITH paid the $36 fee for the TOW BUSTERS policy on November 23, 2015 to a Drivers Choice broker at the time of purchase. Defendant Drivers Choice forwarded the purchase information to Defendants CONFI and NSD via wire communication and also deposited GIBSON's payment in a bank account controlled by Defendant CONFI.

66.    On November 23, 2015, Defendant NSD provided a member number NRDE5266609 to Defendant Drivers Choice for NESMITH via wire communication.

67.    Defendant CONFI thereafter remitted $20 to Defendant NSD for the purchase of a 6 month Tow Buster policy for NESMITH, which was the entire cost of the Tow Buster policy charged to CONFI by NSD.

68.    On or about March 6, 2016 Plaintiff NESMITH inadvertently missed her monthly payment to Defendant Drivers Choice. As a result, she was required to purchase a new automobile insurance policy because she was told the existing policy had lapsed.

69.    On March 7, 2016 NESMITH once again purchased an insurance policy at the Drivers Choice branch in Charleston, South Carolina.

70.    NESMITH was also sold another 6 month Tow Buster policy on March 7, 2016 even though her existing policy did not expire until May 23, 2016. NESMITH was charged $36 and she was not provided any credit or refund for the value remaining on the first policy. The effective dates of the new policy were from March 7, 2016 to September 7, 2016.

71.    On March 7, 2016, upon receipt of payment, Defendant Drivers Choice forwarded the purchase information to Defendants CONFI and NSD via wire communication and also deposited NESMITH'S payment in a bank account controlled by Defendant CONFI. Thereafter, Defendant NSD provided a new member number NRDE5534154 to Defendant Drivers Choice for NESMITH via wire communication.  Defendant CONFI thereafter remitted $20 to Defendant NSD for the purchase of a 6 month Tow Buster policy for NESMITH, which was the entire cost of the Tow Buster policy charged to CONFI by NSD.

## OTHER VICTIMS

72.    On February 20, 2015, Defendants sold Customer RL a Tow Buster Policy (Member No. NRDE4638446) with effective date of 2/20/2015 and expiration date of 8/20/2015 for a purchase price of $36.

73.    On or about February 20, 2015, Defendant Drivers Choice forwarded the purchase information relating to RL to Defendants CONFI and NSD via wire communication and Defendant Drivers Choice received a member number from Defendant NSD via wire communication.

74.    On or about June 19, 2015, Defendants sold Customer RL a second Tow Buster Policy (Member No. NRDE4914474) with effective date of 6/19/2015 and an expiration date of 12/19/2015 pursuant to an installment sale contract for a total purchase price of $60. Customer RL was not provided a credit for the unused portion of the Tow Buster policy issued on 2/20/2015 when RL purchased the second Tow Buster policy on 6/19/2015.

75.    On or about June 19, 2015, Defendant Drivers Choice forwarded the purchase information relating to Customer RL to Defendants CONFI and NSD via wire communication. Thereafter, Defendant NSD provided a new member number for RL to Defendant Drivers Choice via wire communication.

76.    On April 9, 2016, Defendants sold Customer MB a Tow Buster Policy (Member No. DAT5635381) with an effective date of 4/9/2016 and an expiration date of 10/9/2016 pursuant to an installment sale for a total purchase price of $60.

77.    On or about April 9, 2016 Defendant Drivers Choice forwarded the purchase information relating to MB to Defendants CONFI and NSD via wire communication and Defendant Drivers Choice received a member number from Defendant NSD via wire communication.

78.    On or about August 6, 2016, Defendants sold Customer MB a second Tow Buster Policy (Member No. NRDE 5951761) with an effective date of 8/6/2016 and an expiration date of 2/6/2017 for a purchase price of $36. Customer MB was not provided a credit for the unused portion of the Tow Buster policy issued 4/9/2016 when MB purchased the second Tow Buster policy on 8/6/2016.

79.    On or about August 6, 2016, Defendant Drivers Choice forwarded the purchase information relating to Customer MB to Defendants CONFI and NSD via wire communication. Thereafter, Defendant NSD provided a new member number for MB to Defendant Drivers Choice via wire communication.

80.    On or about March 8, 2016, Defendants sold Customer MP a Tow Buster Policy (Member No. NRDE5539492) with an effective date of 3/8/2016 and an expiration date of 9/8/2016 for a purchase price of $36.

81.    On or about March 8, 2016 Defendant Drivers Choice forwarded the purchase information relating to MP to Defendants CONFI and NSD via wire communication and Defendant Drivers Choice received a member number from Defendant NSD via wire communication.

82.    On or about July 16, 2016 Defendants sold Customer MP a second Tow Buster Policy (Member No. NRDE 5892812) with an effective date of 7/16/2016 and an expiration date of 1/16/2017 for a purchase price of $36. Customer MP was not provided a credit for the unused portion of the Tow Buster policy issued 3/8/2016 when MP purchased the second Tow Buster policy on 7/16/2016.

83.    On or about July 16, 2016, Defendant Drivers Choice forwarded the purchase information relating to Customer MP to Defendants CONFI and NSD via wire communication. Thereafter, Defendant NSD provided a new member number for MP to Defendant Drivers Choice via wire communication.

84.    On or about March 8, 2016, Defendants sold Customer JN a Tow Buster Policy (Member No. NRDE5537661) with an effective date of 3/8/2016 and an expiration date of 9/8/2016 for a purchase price of $36.

85.    On or about March 8, 2016 Defendant Drivers Choice forwarded the purchase information relating to JN to Defendants CONFI and NSD via wire communication and Defendant Drivers Choice received a member number from Defendant NSD via wire communication.

86.    On or about July 29, 2016 Defendants sold Customer JN a second Tow Buster Policy (Member No. NRDE 5892812) with an effective date of 7/29/2016 and an expiration date of 1/29/2017 for a purchase price of $36. Customer JN was not provided a credit for the unused portion of the Tow Buster policy issued 3/8/2016 when JN purchased the second Tow Buster policy on 7/29/2016.

15

87.     On or about July 29, 2016, Defendant Drivers Choice forwarded the purchase information relating to Customer MP to Defendants CONFI and NSD via wire communication. Thereafter, Defendant NSD provided a new member number for JN to Defendant Drivers Choice via wire communication.

## FIRST CAUSE OF ACTION
### (RICO-AGAINST CONFI AND NSD)

88.     The CLASS PLAINTIFFS reallege paragraphs 1 through 87 as fully and effectually as if set forth verbatim herein.

89.     The CLASS PLAINTIFFS bring this cause of action solely against DEFENDANTS CONFI and NSD for conspiring, agreeing, and confederating to violate and for violating 18 U.S.C. 1961(c) which makes it illegal for persons employed by or associated with an enterprise engaged in the activities of interstate commerce to conduct and participate, directly or indirectly, in the affairs of said enterprise through a pattern of racketeering.

90.     The CLASS PLAINTIFFS, the other members of the Subclass A are persons within the meaning of 18 U.S.C. 1961(3).

91.     The combination of all of CONFI's subsidiary corporations which collectively own approximately 670 retail insurance brokerages is an enterprise as defined under 18  United States Code § 1961(4).  Furthermore, each separate subsidiary, including Defendant Drivers Choice, is an enterprise as defined under 18 United States Code § 1961(4).

92.     At all times relevant to this action, DEFENDANTS CONFI and NSD were persons associated with said enterprise, yet were separate and distinct from the enterprise.

93.     At all times relevant to this action, DEFENDANTS CONFI and NSD  conspired and agreed to conduct the affairs of the enterprise and did conduct the affairs of the enterprise  through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

94.     At all times relevant to this action, DEFENDANT CONFI conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

95.     At all times relevant to this action, DEFENDANT NSD conducted the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

96.     18 U.S.C. § 1961(1) defines "racketeering activity" to include any act indictable under 18 U.S.C. 1343 (wire fraud).

97.     In furtherance of the conspiracy to violate 18 U.S.C. § 1962 (c), DEFENDANTS CONFI and NSD did cause to be transmitted in interstate wires customer account and payment information from CONFI'S subsidiary retail outlets to CONFI'S operation headquarters in California and to NSD's headquarters in Florida on the dates set forth in paragraphs 48 through 85 above, all in violation of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 2 (aiding and abetting wire fraud),  18 U.S.C. § 1962 (c) (RICO) and 18 U.S.C. § 1962 (d) (RICO Conspiracy).

98.     DEFENDANTS CONFI and NSD have engaged in "a pattern of racketeering activity" by committing or aiding and abetting in the commission of at least two acts of racketeering activity (i.e. wire fraud) within the last 10 years within the meaning of 18 U.S.C. §1961(5).

99.     The CLASS PLAINTIFFS and the other Members of the Subclass A have been injured in their business or property by reason of this violation of 18 U.S.C. § 1962, in that as a direct and proximate result of the complained of acts, the CLASS PLAINTIFFS and the other Members of the Subclass A have suffered damages including, but not limited to, the payment of duplicative fees for Tow Buster policies.

17

100.    By reason of DEFENDANTS' violations of 18 U.S.C. § 1962, the CLASS PLAINTIFFS and the other Members of the Subclass A are entitled to threefold the damages sustained, with interest, at the legal rate and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**(BREACH OF CONTRACT-NSD)**

101.    The CLASS PLAINTIFFS re-allege paragraphs 1 through 87 as fully and effectually as if set forth verbatim herein.

102.    CLASS PLAINTIFFS and members of Subclass A purchased a TOW BUSTER policy for a minimum period of 6 months.

103.    The policy contains a provision titled "TERMS AND CONDITIONS" which states in part: "As a Member of Nation Motor Club, all benefits are available to You up to Your benefit limit, as described throughout this membership, without any additional payments."

104.    CLASS PLAINTIFFS and the members of Subclass A however were charged and made additional payments by NSD during the membership period for the benefits to which they were entitled.

105.    DEFENDANT NSD has therefore breached the contract with CLASS PLAINTIFFS and members of Subclass A.

106.    CLASS PLAINTIFFS and members of Subclass A are entitled to an award of actual damages, including pre-judgment interest.

**THIRD CAUSE OF ACTION**
**(UNJUST ENRICHMENT-ALL DEFENDANTS)**

107.    The CLASS PLAINTIFFS re-allege paragraphs 1 through 87 as fully and effectually as if set forth verbatim herein.

18

108.    The CLASS PLAINTIFFS and the other Members of the Subclass A have conferred a financial benefit upon DEFENDANTS as a result of their paying for overlapping TOW BUSTER policies which provide no additional benefit to CLASS PLAINTIFFS and members of the Class during the period of overlap.

109.    DEFENDANTS obtain this financial enrichment to the detriment of and at the expense to the CLASS PLAINTIFFS and the other Members of the Class.

110.    It would be against equity and good conscience to allow the DEFENDANTS to retain the payments and proceeds that they derived and received, directly and indirectly, from the unlawful and inequitable acts, practices and conduct described in this Complaint.

**FOURTH CAUSE OF ACTION**
**(TRUTH IN LENDING VIOLATIONS-CONFI AND DRIVERS CHOICE)**

111.    The CLASS PLAINTIFF GIBSON re-alleges paragraphs 1 through 87 as fully and effectually as if set forth verbatim herein.

112.    CLASS PLAINTIFF GIBSON and members of Subclass B are consumers as defined in TILA, as each is a natural person and received credit from DEFENDANT CONFI and Drivers Choice for a TOW BUSTERS roadside assistance membership for their personal automobiles.

113.    DEFENDANTS CONFI and Drivers Choice are creditors as defined under TILA because the regularly extend credit for the purchase of TOW BUSTERS roadside assistance membership plans and other ancillary products, which is payable by an agreement in more than four installments.

114.    The amount of credit extended by DEFENDANTS to CLASS PLAINTIFF GIBSON and members of Subclass B for the TOW BUSTERS roadside assistance membership plan is less than TILA's jurisdictional limit of $25,000.

115.    DEFENDANTS CONFI and Drivers Choice do not provide the following written disclosures which are required by TILA: amount financed, an itemization of the amount financed, the finance charges, the annual percentage rate or the identity of the creditor. Furthermore, DEFENDANTS CONFI and Drivers Choice do not conspicuously use the terms "annual percentage rate" and "finance charge" as required under TILA.

116.    CLASS PLAINTIFF GIBSON and members of Subclass B are charged a hidden finance charge by DEFENDANTS CONFI and Drivers Charge by paying a higher purchase price for the TOW BUSTERS plan than other customers who do not enter into installment agreements.

117.    CLASS PLAINTIFF GIBSON and members of Subclass B are therefore entitled to recover damages in the amount of two times the finance charges levied, statutory damages as provided under TILA, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the CLASS PLAINTIFFS pray for relief and judgment as follows:

a. Determining that this action is a proper class action, and certifying the CLASS PLAINTIFFS as Lead Plaintiffs and as Class Representatives under Rule 23 of the Federal Rules of Civil Procedure;

b. Awarding actual and treble damages in favor of the CLASS PLAINTIFFS and all other Members of the Subclass A against DEFENDANTS CONFI and NSD jointly and severally, plus attorneys' fees as a result of wrongdoing alleged in the First Cause of Action in an amount to be proven at trial;

c. Awarding actual damages in favor of the CLASS PLAINTIFFS and all other Members of the Subclass A against DEFENDANT NSD as a result of a breach of contract alleged in the Second Cause of Action;

d.  Awarding  restitution in favor of the CLASS PLAINTIFFS and all other Members of the Subclass A against all DEFENDANTS, jointly and severally,  for unjust enrichment alleged in the Third Cause of Action

e.  Awarding statutory damages and attorneys' fees and costs in favor of CLASS PLAINTIFF GIBSON and all other Members of Subclass B against DEFENDANTS CONFI and Drivers Choice for violation of TILA alleged in the Fourth Cause of Action;

f.  Awarding the CLASS PLAINTIFFS an incentive payment for serving as the Class representatives;

g.  For the creation of a common fund out of which attorneys' fees, costs of the suit, including accountants' and experts' fees, shall be awarded; and

h.  Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

CLASS PLAINTIFFS hereby demand a trial by jury on all claims so triable.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,


/s/ James M. Griffin
James M. Griffin (Fed. I.D. #1053)
Margaret Fox, (Fed. I.D.# 10576)
GRIFFIN & DAVIS LLC
Post Office Box 999
Columbia, SC 29202
(803) 744-0800
(803) 744-0805 facsimile
jgriffin@griffindavislaw.com
mfox@griffindavislaw.com

Richard A. Harpootlian (Fed. I.D. #1730)
RICHARD A. HARPOOTLIAN, P.A.
Post Office Box 1040
Columbia, South Carolina 29202
(803) 252-4848
(803) 252-4810 (facsimile)
rah@harpootlianlaw.com


Herbert W. Louthian Jr.
(Fed. ID No. 2729)
bert@louthianlaw.com
LOUTHIAN LAW FIRM, P.A.
P.O. Box 1299
Columbia, SC 29202
Telephone: (803) 454-1200
Facsimile: (803 256-6033


ATTORNEYS FOR PLAINTIFFS

August 18, 2016