**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| KAREN GIBSON and LETESHA NESMITH, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>CONFIE INSURANCE GROUP HOLDINGS, INC., DRIVER'S CHOICE INSRUANCE SERVICES, LLC; and NATION MOTOR CLUB, LLC, d/b/a NATION SAFE DRIVERS )<br><br>Defendants. ) | Civil No. 2:16-cv-02872-DCN<br><br>**ORDER** |

The following matters are before the court on defendant Nation Motor Club, LLC d/b/a Nation Safe Drivers's ("NSD") motion to dismiss, ECF No. 17, defendants Confie Insurance Group Holdings, Inc. ("Confie") and Drivers Choice Insurance Services LLC's ("Driver's Choice") motion to dismiss, ECF No. 19, and Confie and Drivers Choice's motion to strike, ECF No. 20.

For the reasons set forth below, the court (1) grants in part and denies in part NSD's motion to dismiss, ECF No. 17, granting as to the United States Racketeer Influenced and Corrupt Organizations Act ("RICO") claim but denying as to the breach of contract and unjust enrichment claims; (2) grants in part and denies in part Confie and Driver's Choice's motion to dismiss, ECF No. 19, granting as to the court's personal jurisdiction over Confie but denying the motion as to the RICO, Truth in Lending Act ("TILA"), and unjust enrichment claims against Driver's Choice; and (3) denies in full Confie and Driver's Choice's Motion to Strike, ECF No. 20.

# I.  BACKGROUND

This is a putative class action by plaintiffs Karen Gibson ("Gibson") and Latesha Nesmith ("Nesmith") (collectively, "plaintiffs") filed against defendants Confie, Driver's Choice, and NSD on August 18, 2016.  Plaintiffs allege that they were defrauded by defendants in the purchase of automobile insurance policies from Confie and/or its subsidiaries and the purchase of multiple TowBusters policies—optional roadside service policies that can be purchased either directly from NSD or sold through Confie or its subsidiaries, including Driver's Choice.  The TowBusters policy is an ancillary six-month policy that is $36–40 if purchased upfront for the full six-month time period and $10/month for a total of $60 when purchased on a monthly basis.

Plaintiff Gibson purchased an automobile insurance policy from a Driver's Choice insurance broker in Sumter, South Carolina on October 8, 2015, for a six-month term from October 8, 2015 until April 8, 2016.  At the same time that she purchased her insurance policy, Gibson also purchased a six-month TowBusters policy at a rate of $10 per month.  Gibson failed to make a monthly payment on her automobile insurance policy, leading to its lapse.  However, the missed payment did not cause the TowBusters policy to lapse.  Gibson then purchased a new automobile policy from a different Driver's Choice insurance broker lasting from February 8, 2016 until August 8, 2016.  At this point, Gibson also purchased a new six-month TowBusters policy up front for $36, even though her old TowBusters policy was still in place.

Nesmith purchased an automobile insurance policy from a Driver's Choice insurance broker in Charleston, South Carolina.  The insurance policy term was for a six-month period, from November 23, 2015 through May 23, 2016.  Nesmith elected to

purchase a six-month TowBusters policy for $36 up front at the time of her purchase of the automobile insurance policy, which ran from the same six-month period of November 23, 2015 until May 23, 2016. Nesmith then failed to make the monthly payment on the auto policy and the automobile insurance policy lapsed, at which point she purchased a new automobile policy from the same Driver's Choice insurance broker lasting from March 7, 2016 until September 7, 2016. When purchasing her new insurance policy, Nesmith purchased a six-month TowBusters policy that ran concurrently with the new automobile policy, even though her old TowBusters policy was still in place.

Plaintiffs allege that defendants Confie and NSD conspired together to double charge those consumers who missed the deadline to make a monthly premium payment on their automobile policies, and then charged for a new TowBuster policy when reinstating the automobile insurance policy. Plaintiffs seek to certify two classes. The first putative subclass ("Subclass A") includes:

> all persons ("customers") who purchased a TOW BUSTERS emergency roadside service policy issued by NSD and an automobile insurance policy through any one of defendant CONFI's retail insurance brokerage outlets in the United States and the customer:
>
> (i) failed to pay the monthly automobile insurance premiums, resulting in the cancellation of their automobile policy; and
>
> (ii) purchased a replacement automobile insurance policy from a CONFI owned or controlled retail brokerage outlet; and
>
> (iii) was sold an additional TOW BUSTERS policy during the membership term of the initial TOW BUSTERS policy, without being provided any credit for the value of the unexpired term of the initial TOW BUSTERS policy within four (4) years from the commencement of this action.

Compl. ¶ 12. Both named plaintiffs, Gibson and Nesmith, are potential class representative members of this first proposed class. Id. at ¶ 13. The second class ("Subclass B") includes:

> all persons ("customers") who financed the purchase of a TOW BUSTERS emergency roadside service policy or any other ancillary agent product "Agency Product" sold through any one of Defendant CONFI's retail insurance brokerage outlets in the United States pursuant to an installment payment plan requiring more than four (4) payments within one (1) year from the commencement of this action.

Id. at ¶ 12. Gibson is the only named plaintiff of this second proposed subclass.

Plaintiffs' complaint states four causes of action: (1) NSD breached a contractual provision by charging customers for a second TowBusters policy before the expiration of the initial TowBusters policy; (2) Confie, Driver's Choice, and NSD were unjustly enriched by plaintiffs as a result of the payment for overlapping TowBusters policies; (3) Confie and Driver's Choice acted as creditors under TILA, 15 U.S.C. §§ 1601-1667f (2012), in offering a monthly installment payment plan for the TowBusters Policy, but failed to provide the required disclosures under TILA; and (4) Confie and NSD agreed to conduct the alleged unlawful affairs in violation of federal wire fraud and RICO statutes. Compl. ¶¶ 88–117.

NSD filed a motion to dismiss on October 3, 2016, ECF No. 17, to which plaintiffs responded on November 3, 2016, ECF No. 26. NSD replied on November 10, 2016. ECF No. 28. Confie filed a motion to dismiss on October 3, 2016, ECF No. 19, to which plaintiffs responded on November 3, 2016, ECF No. 26. Confie replied on November 14, 2016. ECF No. 29. Confie filed a motion to strike on October 3, 2016, ECF No. 20, to which plaintiffs responded on November 3, 2016, ECF No. 26. Confie

replied on November 14, 2016, ECF No. 30.  The court held a hearing on December 13, 2016.  All motions have been fully briefed and are now ripe for the court's review.

## II.  STANDARD

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) ... does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief.  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### B. Rule 9(b)

Although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," when a party alleges "fraud or mistake," he or she "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Particularity requires that the claimant state "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 at 590 (2d 1990)). A primary purpose of Rule 9(b) is to ensure "that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of." Harrison, 176 F.3d at 784 (internal citations omitted). Lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6). See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 901 (5th Cir.1997).

### C. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" Waste Mgmt. Holdings, Inc.

v. Gilmore, 252 F.3d 316, 347 (4th Cir.2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed.1990)).

## III.  DISCUSSION

### A.  Confie and Drivers Choice's Motion to Dismiss

Confie moves to dismiss the complaint because it fails to state a claim as to the RICO cause of action, the TILA violation, and for unjust enrichment.  Confie also moves for an order dismissing the complaint entirely on the grounds that the court lacks personal jurisdiction.  ECF No. 19 at 1.  The court addresses the personal jurisdiction argument first, and finds that there is no personal jurisdiction over Confie in this court.  It then moves to address the substantive RICO, TILA, and unjust enrichment causes of action against the remaining defendants as alleged in the complaint.

#### 1.  Personal Jurisdiction

Confie does not directly operate any locations in South Carolina, and is a Delaware corporation with headquarters in Plano, Texas.  ECF No. 19 at 28.  Driver's Choice is a wholly owned subsidiary of Confie that operates out of twelve locations in South Carolina.  ECF No. 19 at 3.  Confie argues that plaintiffs have failed to allege sufficient facts for the court to find that it has personal jurisdiction over Confie.

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists.  See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).  When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction.  See Mylan Labs, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most

favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex Corp., 234 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000).

In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Second, if the statute does authorize jurisdiction then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause, Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002), so the only question before the court is whether the exercise of personal jurisdiction over Confie would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310 (1945). More broadly, due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably

anticipate being haled into court there." World–Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. Id. at 292.

Personal jurisdiction over a nonresident defendant can be either specific or general. ESAB Group, Inc., 126 F.3d at 623–24. A court has specific jurisdiction when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36–2–803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). A court has general jurisdiction when a suit is unrelated to the defendant's contacts with the forum state. General jurisdiction can be exercised upon a showing that the defendant's contacts are of a "continuous and systematic nature." See S.C.Code Ann. § 36–2–802; Helicopteros Nacionales, 466 U.S. at 416.

To meet the first prong for specific personal jurisdiction, plaintiffs must plead sufficient facts to establish that Confie has established minimum contacts in South Carolina. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (Setting forth the due process requirements for asserting specific jurisdiction in a three part test: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.). The Fourth Circuit looks to a number of factors to determine whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there."

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014), (quoting

Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) cert. denied, 135 S.

Ct. 2860 (2015). In the business context, the Fourth Circuit looks to:

> "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

Id. at 560 (quoting Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th

Cir. 2009)).

Here, plaintiffs fail to make any specific factual allegations regarding any of the

Universal Leather factors, and instead allege that while Confie is not "organized and

existing" pursuant to the laws of South Carolina, it "regularly transact[s] business in this

State, solicit[s] business in this State, derive[s] substantial revenue from services

rendered in this State, and the causes alleged herein arise from such conduct." Compl.

¶¶ 3, 10. Lacking any specific facts, these statements are incantations of legal

conclusions and are insufficient to allow the court to find that Confie has availed itself of

the privilege of conducting business in South Carolina. Since plaintiffs have failed to

satisfy the first prong of the test for specific jurisdiction, the court need not move onto a

consideration of prongs two and three. Consulting Engineers Corp., 561 F.3d at 278.

The court now moves to analyze whether the court has general jurisdiction over

Confie. Plaintiffs allege that Confie "collects revenues from the retail outlets [in South

Carolina] and pays salaries and commissions for employees residing in South Carolina, provides training materials to the wholly owned subsidiaries in South Carolina, and links all of the retail outlets together and with Confie through an integrated network computer system into which information relating to the purchase of ancillary Agency Products is entered." Compl. ¶¶ 31, 33, 34. These allegations establish de minimis contact with South Carolina at best, and certainly do not rise to contacts of a "continuous and systematic nature" needed for the court to exercise general jurisdiction over Confie as laid out in Helicopteros. The threshold level of contacts with the forum state required for the exercise of general jurisdiction is significantly higher than for specific jurisdiction and must be fairly extensive. ESAP Grp., Inc., 126 F.3d at 622.

Plaintiffs assert that Confie "controls and directs the operation of [the separate corporate entities] from its operational headquarters in California and Texas." Compl. ¶ 29. However, just because Confie's wholly owned subsidiary Driver's Choice conducts business in South Carolina does not, by itself, allow the court to maintain personal jurisdiction over Confie. The Supreme Court held in Daimler AG v. Bauman, 134 S. Ct. 746, 759 (2014), that a corporate parent is not subject to personal jurisdiction in a forum state simply because of the presence of its subsidiary in the forum state. A court may "attribute the actions of a subsidiary corporation to the foreign parent corporation only if the parent exerts considerable control over the activities of the subsidiary." Mylan Labs, 2 F.3d at 61. Here, plaintiffs allege that Confie collects revenue from Driver's Choice, pays employees at its wholly owned subsidiaries, provides training materials, and provides a networked computer system for data entry. Compl. ¶¶ 31, 32, 34. Payments and providing resources is not enough to rise to the level of "considerable control" that is

required to exert jurisdiction under <u>Daimler AG</u>. Without more, the court cannot find general jurisdiction over Confie with such minimal contacts. Otherwise, Confie would be subject to personal jurisdiction in every state that it had a subsidiary company, precisely the scenario that <u>Daimler AG</u> does not allow.

In their response, plaintiffs argue that 18 U.S.C. § 1965, which states that "[s]ervice of a summons effectuates personal jurisdiction over a defendant" is enough for this court to exercise personal jurisdiction. ECF No. 25 at 19. However, even after an effective service of process, personal jurisdiction must still comport with due process. <u>ESAB Grp., Inc.</u>, 685 F.3d at 391. As explained above, the court finds that Confie's relationship as a corporate parent to the various wholly owned corporate subsidiaries that operate retail locations within South Carolina does not rise to the level of "considerable control" as outlined in <u>Daimler AG</u>, and therefore, the court cannot exercise personal jurisdiction over Confie. Since there is no personal jurisdiction over Confie, the court cannot proceed to the remaining claims.[1]

### 2.  RICO

The court discusses plaintiffs' RICO claims in-depth in section III.B.1, and so does not repeat the analysis here.

### 3.  Truth in Lending Act

Plaintiffs allege that by offering a month-to-month payment plan for the TowBusters policy, Confie and Driver's Choice extended credit as defined by TILA to

---

[1] Plaintiffs also argue that Confie's participation in the conspiracy to violate RICO authorizes personal jurisdiction under South Carolina Code of Laws Section 36-2-803(1)(c). ECF No. 25 at 22. However, as explained below in Section III.B.1, the court finds that plaintiffs have adequately alleged a RICO violation. Accordingly, plaintiffs have failed to allege sufficient facts to establish that Confie has participated in a conspiracy such that Section 36-2-803(1)(c) would be applicable.

Gibson and the members of plaintiff subclass B.[2]  Compl.  ¶¶ 112–14.  The amount of credit that defendants extended to members of Subclass B is alleged to be less than TILA's jurisdictional limit of $25,000.  Id.  ¶ 114.  Plaintiffs allege that Subclass B members were charged a hidden finance charge by paying a higher purchase price for the TowBusters monthly installment plan—$60 total—than those customers who paid for the TowBusters policy upfront—$36–40.  Id.  ¶ 116.  Confie contends that plaintiffs have failed to allege a cognizable TILA claim.  The court disagrees.

Congress enacted TILA in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  15 U.S.C. § 1601(a).  Accordingly, TILA and its implementing regulation, 12 C.F.R. § 226 ("Regulation Z"), require creditors to "clearly and conspicuously" disclose certain information pertaining to credit transactions.  See 15 U.S.C. §§ 1632(a), 1635(a).  TILA provides individuals with a civil cause of action for damages against any creditor who fails to make the required disclosures.  15 U.S.C. § 1640(a)(1).  For a TILA violation, there must first be a "credit sale," which the statute describes as:

> any sale in which the seller is a creditor.  The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or, for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

---

[2] As discussed in section III.A.1, the court finds that it does not have personal jurisdiction over Confie.  Therefore, it analyzes the TILA claim against the remaining party, Driver's Choice.

15 U.S.C. § 1602(g). Confie argues that it is not a creditor under TILA because it does not allow debtors to "defer payment of debt or to incur debt and defer its payment." ECF No. 19 at 23. Additionally, Confie argues that plaintiffs have not sufficiently pleaded that a credit sale occurred.[3] Id. at 24.

15 U.S.C. § 1602(u) and Regulation Z requires a creditor to disclose "the total of payments, the number and amount of payments, [and] the due dates or periods of payments scheduled." Larrabee v. Bank of Am., N.A., 714 F. Supp. 2d 562, 566 (E.D. Va. 2010), aff'd sub nom. Larrabee v. Bank of Am., NA, 474 F. App'x 940 (4th Cir. 2012). Even a technical violation of the statute can give rise to liability under TILA. See Mars v. Spartanburg Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced . . . [Thus] 'a technical violation of the Act [is] sufficient to subject [the creditor] to civil liability under § 1640.'") (internal quotations omitted).

Here, Confie gave consumers who chose to purchase a TowBusters policy on a monthly installment plan no disclosure that they would be paying a higher amount than those consumers who chose to pay up-front. TILA and Regulation Z require that lenders

---

[3] Confie argues that to allege a violation of a TILA claim, plaintiffs must demonstrate (1) a credit sale, (2) by a creditor, and (3) a failure to make the series of statutorily required disclosures prior to the consummation of the credit agreement. ECF No. 19 at 22. In arguing that plaintiffs have failed to state a claim under TILA, Confie relies heavily—almost exclusively—on a three-part test in the Southern District of Texas case Ysasi v. Nucentrix Broadband Networks, Inc., 205 F. Supp. 2d 683, 687 (S.D. Tex. 2002). The Ysasi test may be applicable in Texas, but Confie has provided the court with no similar test that a court within this circuit has used. Indeed, the court was unable to find any Fourth Circuit case that outlines such a test.

clearly disclose loan terms to consumer borrowers.[4]  Courts have found that under TILA,

a higher cash price paid for buying on credit is a "finance charge" which must be

disclosed to consumer as such under TILA.  See, e.g., Balderos v. City Chevrolet, 214

F.3d 849 (7th Cir. 2000) (holding that an allegation that sale price of financed cars

substantially exceeded price at which comparable vehicles were sold for cash satisfied

requirement of TILA claim of charge avoidable by paying cash); Ringenback v. Crabtree

Cadillac-Oldsmobile, Inc., 99 F. Supp. 2d 199 (D. Conn. 2000) (holding that if merchant

charges customers using credit higher cash price than it charges customers paying with

cash, that extra charge must be disclosed under TILA as finance charge).

Keeping in mind the congressional purpose of TILA of promoting the informed

use of credit, the court denies Confie's motion to dismiss as to the TILA claim.

### a.     Unjust Enrichment

The court discusses plaintiffs' unjust enrichment claim in the section addressing

NSD's motion to dismiss.  Plaintiffs allege that Driver's Choice double-billed customers

with overlapping TowBuster policies, and that plaintiffs and putative Subclass A

members received no additional benefit during the overlap period for their TowBuster

---

[4] Driver's Choice makes an interesting argument that Regulation Z exempts entirely from its definition of credit sale any "bailment or lease" that is "terminable without penalty at any time by the consumer."  12 C.F.R. § 226.2(a)(16).  Since plaintiffs have not pleaded that they could not terminate the TowBusters month-to-month installment plan at any time without a penalty, Driver's Choice would not be a creditor under TILA and there would be no termination policy under TILA.   However, plaintiffs have alleged that by terminating the initial TowBusters policy and initiating a second TowBusters policy, they lost out on the months of the policy that they had paid for but did not receive roadside assistance services, and that they received no refund for those months of the policy that they did not use.  The court finds that this is a penalty for termination.

policies but NSD continued to receive duplicative payments for the overlap periods. The court therefore denies the motion to dismiss as it relates to the unjust enrichment claim.[5]

### B.  NSD's Motion to Dismiss

NSD brings a motion to dismiss on the RICO, breach of contract, and unjust enrichment claims. ECF No. 17 at 8. The court addresses each claim in turn.

#### 1.  RICO

NSD contends that the plaintiffs' cause of action for alleged violation of RICO should be dismissed because it fails to set forth the required elements of a RICO cause of action generally or with the required specificity to plead a fraud claim under Rule 9(b). ECF No. 17 at 8. The court agrees with both prongs of this argument.

##### a.  RICO "Enterprise" and "Person"

NSD first argues that the complaint provides no basis for logically separating the "enterprise" from the "person" as required by RICO. ECF No. 17 at 12. NSD then argues that the complaint fails to allege that NSD managed or conducted the affairs of any alleged enterprise. Id. at 12. Third, NSD argues that the complaint fails to plead facts identifying the organizational and decision making structure of the alleged enterprise. Id. at 13. The court finds that the complaint does not adequately plead an enterprise distinct from an alleged person associated with the enterprise, a necessary element of a RICO action.

---

[5] Confie cites to just one case in its unjust enrichment argument to argue that plaintiffs' purchase of overlapping TowBusters policies for which they were never refunded or compensated does not confer additional benefit to Confie or Driver's Choice. Since the case is a 1986 Minnesota Court of Appeals case and the language seems to confine its holding to health insurance schemes such as Medicare, the court does not find the holding to be persuasive. Confie has provided no cases within this circuit where a court has found that overlapping coverage does not constitute "unjust enrichment" because the consumer received the benefit of his bargain.

Plaintiffs' RICO claim against Confie and NSD stems from the allegation that defendants sold "overlapping and duplicative" TowBusters road side policies to customers who purchased replacement automobile insurance after their existing auto policy lapsed mid-term, and customers are not provided credit for the unexpired term of their pre-paid TowBusters policies. Compl. ¶ 27. Plaintiffs bring the cause of action under 18 U.S.C. § 1962(c), which makes it unlawful:

> for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

In order for a civil RICO claim to survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985). The plaintiff must additionally plead proximate cause, such that she was injured in her business or property "by reason of" the RICO violation. Hemi Group, LLC v. City of New York, N.Y., 559 U.S. 1, 6 (2010).

NSD first contends that plaintiffs have not properly alleged the existence of a RICO enterprise that is distinct from the named defendants, and so, their RICO claim necessarily fails. ECF No. 17 at 9. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). There must be a "person," alleged to have violated Section 1962(c) and to be liable to the claimant for damages, who is separate and distinct from the "enterprise," or tool, through which the RICO

violation occurred.  See Busby v. Crown Supply, Inc., 896 F.2d 833, 840–41 (4th Cir. 1990).  A "person" can be an individual or corporate entity.  18 U.S.C. § 1961(3).  "Enterprise," as defined in 18 U.S.C. § 1961(4), "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  A RICO enterprise is characterized by "continuity, unity, shared purpose and identifiable structure."  United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994) (internal quotation omitted).  To prove an "enterprise" requires proof of three elements: (1) an ongoing organization; (2) associates functioning as a continuing unit; and (3) that the enterprise is an entity "separate and apart from the pattern of activity in which it engages."  Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d 464, 477–78 (D. Md. 2009).

To support the proposition that a RICO action is sufficiently pleaded where the alleged enterprise "consists only of the Confie subsidiaries" and where Confie and NSD are "alleged to be persons 'associated with said enterprise, yet . . . separate and distinct from the enterprise,'" plaintiffs cite to the Supreme Court's decision in Cedric Kushner. ECF No. 25 at 6.  Cedric Kushner is indeed authoritative, but it does not help plaintiffs. In Cedric Kushner the Supreme Court addressed an alleged § 1962(c) claim where the "person" was the individual sole owner and employee of a corporation, and the "enterprise" was the corporation.  533 U.S. at 160.  The Supreme Court held that in this factual situation, "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.  And we can find nothing in the statute that requires more 'separateness' than that."  Id. at 163.  However, the Supreme Court explicitly

distinguished the case before it from instances in which the "corporation [i]s the 'person' and the corporation, together with its employees and agents, [is] the 'enterprise.'" See id. at 164. This is the exact situation that the court has before it—plaintiffs allege that the RICO enterprise consists of the Confie subsidiaries, and that the enterprise is separate and distinct from defendants Confie and NSD who are alleged to be persons "associated with said enterprise, yet . . . separate and distinct from the enterprise." ECF No. 25 at 6.

The Fourth Circuit has held "when a corporation and its wholly owned subsidiary are involved", a 'person' is not distinct from an 'enterprise.'" NCNB Nat'l Bank of N.C., 814 F.2d 931 (4th Cir. 1987); overruled on other grounds by Busby, 896 F.2d 833; see also United States v. Crysopt Corp., 781 F.Supp. 375, 381 (D. Md. 1991) ("Fourth Circuit precedent is clear that RICO defendants must be legally distinct from the enterprise through which they allegedly conduct racketeering activities."). Although not adopting a per se rule, other courts have held that a parent and its wholly owned subsidiary lack the distinctiveness necessary to be a "person" and an "enterprise," respectively, where there is no assertion that the subsidiary took action independent of its parent. See, e.g., Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 448–49 (1st Cir. 2000). In Bailey v. Atl. Auto. Corp., 992 F. Supp. 2d 560, 583 (D. Md. 2014), the court held that an automobile retailer and its wholly-owned subsidiary were not sufficiently distinct to constitute an "enterprise" under RICO, where the retailer's subsidiaries were all under common ownership, and operated jointly and associated together to sell used vehicles. This court agrees, and finds that plaintiffs' allegations are inadequate to plead a plausible claim that Confie's subsidiaries are a distinct entity from Confie for purposes of the § 1962(c) claim. The complaint's lack of delineation of the enterprise and the persons

making up the enterprise violates the well-established rule that, under RICO, the "enterprise" must not simply be "the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd., 533 U.S. at 161; Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (rejecting "enterprise" allegations where plaintiff alleged that corporation was RICO "person" and corporation and its employees and agents were the RICO "enterprise").

Since plaintiffs have not adequately pled an "enterprise" under § 1962(c) that is separate from the persons who are employed by or associated with the enterprise, the court dismisses the RICO cause of action.[6]  It is unnecessary for the court to analyze NSD's remaining arguments on the elements of a RICO claim—that plaintiffs have failed to allege that NSD managed or conducted the affairs of any alleged enterprise and that plaintiffs have improperly pled facts identifying the organizational and decision making structure of the alleged enterprise.

###    b.    Pleading RICO claim with particularity under Rule 9(b)

Even if the court were to find that the complaint sufficiently pleads the elements of a RICO claim—which, as explained above in section III.B.1.a., it does not—plaintiffs have also failed to plead a pattern of racketeering activity with particularity as required by Federal Rule of Civil Procedure 9(b).  This too is fatal to their RICO claim.

Under Rule 9(b), a party must state with particularity the circumstances constituting fraud.  See Dealers Supply Co. v. Cheil Indus., Inc., 348 F. Supp. 2d 579,

_____

[6] Plaintiffs also state a RICO claim under 18 U.S.C. § 1962(d).  Section 1962(d) makes it unlawful "for any person to conspire to violate" § 1962(c).  The facts underlying the § 1962(d) claim are the same as the facts underlying the § 1962(c) claim, that of the allegedly duplicative TowBusters policy.  Since the court dismisses the § 1962(c) claim, this precludes plaintiffs from proceeding on the § 1962(d) claim as well.

590 (M.D.N.C. 2004) ("Courts have been quick to reject pleadings in which multiple defendants are lumped together and in which no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made. . ."); see also Harrison, 176 F.3d at 783 n.5 ("[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6).").

Plaintiffs' RICO action is predicated on wire fraud and aiding and abetting wire fraud. Compl. ¶ 97. A plaintiff asserting a RICO claim predicated on fraud must show both (1) a scheme disclosing an intent to defraud and (2) the mails or interstate wires were used in furtherance of the scheme. Chisholm v. TranSouth Fin. Corp., 95 F.3d 331, 336 (4th Cir. 1996). It is certainly possible for defendants to be guilty of RICO violations if they commit two or more acts of mail or wire fraud and the acts are sufficiently related and sufficiently continuous. Morley v. Cohen, 888 F.2d 1006, 1009–11 (4th Cir. 1989). However, the Fourth Circuit has cautioned courts against basing a RICO claim on predicate acts of mail and wire fraud because "'[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.'" Anderson v. Foundation for Advancement, Educ. and Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998) (quoting International Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 154–55 (4th Cir. 1987)). While the complaint here alleges that Confie, its subsidiaries, and NSD distributed customer information via wire to each other, there are no allegations that NSD sent anything by wire as part of the allegedly fraudulent TowBusters scheme that is different from the information sent or received by NSD by wire in the ordinary course of business.

Additionally, plaintiffs do not identify with particularity the persons at NSD or Confie or any of the subsidiaries who committed the alleged fraud. The complaint

simply alleges that Confie and NSD "conspired and agreed to conduct the affairs of the enterprise and did conduct the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (c), (d)." Compl. ¶ 93. It does not reference any individuals, officers, or employees of Confie or NSD who allegedly participated in the TowBusters scheme. Plaintiffs have failed to specify which defendants made false representation, what those representations were, when the representations were made, how the representations were made, and why the representations were false as required by Rule 9(b). Thus, as an alternative basis for dismissing the RICO claim, the court finds that plaintiffs have failed to allege their RICO claims with sufficient particularity.

### 2. Breach of Contract Claim

Plaintiffs and the putative members of Subclass A assert a breach of contract action against NSD based on the TowBusters membership agreement, alleging that they were charged for payments for TowBusters benefits to which they were already entitled, in violation of the TowBusters policy provision that stated "all benefits are available to You up to Your benefit limit, as described throughout this membership, without any additional payments." Id. ¶¶ 103–04. NSD argues that the breach of contract action should be dismissed because the complaint does not allege a breach of the terms of any TowBusters membership contract. ECF No. 17 at 17.

To prove a breach of contract action, a party must prove the contract, its breach, and the damages caused by such breach. Baughman v. Southern Railway Co., 121 S.E. 356 (S.C. 1924). The specific provision of the TowBusters policy at issue states "[a]s a member of Nation Motor Club, all benefits are available to You up to Your benefit limit, as described throughout this Membership, without any additional payments." Compl. ¶¶

103–04.  Plaintiffs and members of Subclass A were charged and made additional payments to NSD for a second TowBusters policy during the membership period for their initial TowBusters policy.  Id. ¶ 104.  For members of subclass A, all of whom purchased the six-month policy up-front, under the terms of the policy they should have membership benefits for the entire six-month period.  Plaintiffs have sufficiently alleged that NSD's practice of double-billing members for the overlap period is in breach of the applicable provision of the policy.  Accordingly, the motion to dismiss the breach of contract claim is denied.

### 3.    Unjust Enrichment

Plaintiffs allege an unjust enrichment claim against all defendants, arguing that defendants have received a benefit as a result of Subclass A paying for overlapping TowBuster policies, leading to duplicate payment for the same TowBuster membership benefits.  Compl. ¶¶ 107–110.  NSD argues that this cause of action should be dismissed because there was no payment for the first TowBusters membership, and that even the purchase of a second TowBusters membership does not confer a benefit on NSD because plaintiffs agreed to purchase the second membership after either not paying in full for the first membership or if the first membership provided coverage for a separate period of time than the second membership.  ECF No. 20.  The court is not convinced.

Under South Carolina law, a party may be unjustly enriched when it retains benefits or money which "in justice and equity belong to another."  <u>Dema v. Tenet Physician Servs.-Hilton Head, Inc.</u>, 678 S.E.2d 430, 434 (S.C. 2009).  Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff.  <u>Ellis v. Smith Grading and Paving, Inc.</u>,

366 S.E.2d 12, 14 (S.C. Ct. App. 1988).  Here, plaintiffs allege that NSD double-billed customers with overlapping TowBuster policies, which resulted in plaintiffs and putative subclass A members receiving no additional benefit during the overlap period between their first and second TowBuster memberships while NSD receive duplicative payments for the overlap periods.  The court finds that this practice of double billing conferred a benefit upon NSD, and denies defendants' motion to dismiss the unjust enrichment claim.

### C. Confie's Motion to Strike the Class

Confie and Driver's Choice move to strike the class allegations from the complaint on the grounds that they are overbroad and lack common questions of fact or law.  ECF No. 20 at 1.  Specifically, Confie moves to strike the proposed class definition on the grounds that: (1) the allegations are overbroad because they do not exclude individuals whose TowBusters policy lapsed due to non-payment; (2) the allegations are overbroad because they may include individuals who chose to add an additional TowBusters policy due to the addition of a vehicle; (3) the allegations are overbroad because they may include individuals who chose to overlap, or "layer," policies where the initial policy was ending to extend the time for coverage; (4) the allegations require individual inquiry as to each putative class member's reliance on alleged misrepresentations, whether each putative class member was injured, and the amount of the individual injury; and (5) the alleged TILA violation is not sufficient to allege injury in fact for purposes of Rule 23 certifications and the proposed class definition for the TILA claim is overbroad because it includes the undefined term "other ancillary insurance product."  ECF No. 20 at 1–2.  The court finds that it is premature to decide a

motion to strike at this stage of the proceedings, and so denies the motion in full. Defendants are free to refile the motion at a later time.

Confie and Driver's Choice make their Motion to Strike and/or Dismiss Class Allegations pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D). ECF No. 20 at 8. Rule 12(f) empowers courts to strike immaterial matter to promote judicial efficiency and avoid needless expenditure of time and money. <u>Billips v. NC Benco Steel, Inc.</u>, 2011 WL 4829401, at *1 (W.D.N.C. Oct. 12, 2011). Upon motion by a party, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "striking a party's pleadings is an extreme measure" and these types of motions are "viewed with disfavor and are infrequently granted." <u>Stanbury Law Firm v. Internal Revenue Serv.</u>, 221 F.3d 1059, 1063 (8th Cir. 2000) (internal quotation marks and citations omitted).

Confie and Driver's Choice allege that plaintiffs' allegations "necessarily require" individual factual inquiries to determine liability, and that, as a result, the individual damages will be different. ECF No. 20 at 10. Confie and Driver's Choice argue that if the court where to proceed with this matter as a class action there would be a need to conduct "mini-trials." ECF No. 20 at 10. That may be, but the proper time to make these arguments is at the class-certification stage, not the pleadings stage. For example, Confie and Driver's Choice cite to this court's opinion in <u>Solo v. Bausch & Lomb Inc.</u>, No. 2:06-cv-02716-DCN, 2009 WL 4287706, at *1 (D.S.C. Sept. 25, 2009), for the proposition that class allegations should be rejected where "determining membership in the class would require fact-intensive mini-trials." However, <u>Solo</u> was before the court on a motion for class certification, not a motion to strike.

"Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, a decision denying class status by striking class allegations at the pleading stage is inappropriate." Boatwright v. Walgreen Co., 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)). Confie and Drivers' Choice may refile this motion so that plaintiffs can prove the merits of their class claims at the class-certification stage. This decision is in line with other courts in this circuit that have concluded plaintiffs are "generally entitled to pre-certification discovery to establish the record the court needs to determine whether the requirements for a class action suit have been met." Griffin v. Harley Davidson Credit Corp., 2010 WL 233764, at *1 (D.S.C. Jan. 14, 2010) (citing Buchanan v. Consol. Stores Corp., 217 F.R.D. 178, 185 (D. Md. 2003)); see also Miller v. Baltimore Gas & Elec. Co., 202 F.R.D. 195, 201–02 (D. Md. 2001) (denying defendants' motion to dismiss class claims where the named plaintiffs had not yet engaged in discovery to make a showing that they satisfied requirements for class certification). The issues that the present motion to strike calls into question—such as the commonality of questions of law or fact for members in the proposed subclasses—are the same issues that could be decided in a future motion for class certification. See Chen–Oster v. Goldman, Sachs & Co., 2012 WL 205875, *4 (S.D.N.Y. Jan. 19, 2012) (recommending that defendant's motion to strike class allegations be denied as premature because the arguments were "indistinguishable from the issues that would be decided in a motion for class certification"). Defendants can bring up the same arguments that they present before the court in this motion to strike at the class certification stage, after parties have an opportunity for discovery. The court

therefore denies defendants Confie and Driver's Choice's preemptive motion to strike

class allegations be denied as it relates to the allegations about Subclass A and B.

## IV.  CONCLUSION

Based on the foregoing reasons, the court (1) **GRANTS IN PART AND DENIES IN PART** NSD's motion to dismiss, ECF No. 17, **GRANTING** as to the RICO claim but **DENYING** as to the breach of contract and unjust enrichment claims; (2) **GRANTS IN PART AND DENIES IN PART** Confie and Driver's Choice Motion to Dismiss, ECF No. 19, **GRANTING WITHOUT PREJUDICE** as to the court's lack of personal jurisdiction over Confie but **DENYING** as to the RICO, TILA, and unjust enrichment claims against Driver's Choice; and (3) **DENIES** Confie and Driver's Choice's Motion to Strike, ECF No. 20.  The court **GRANTS** plaintiffs leave to amend the complaint.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**July 10, 2017
Charleston, South Carolina**